# MEMO ENDORSED

Defendants are directed to respond to the motion no later than July 17, 2024. SO ORDERED.

Edgardo Ramos, U.S.D.J.
Dated: 7/9/24
New York, New York

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Talha S. Pasha**<br><br>-against-<br><br>New York State Department of Health,<br>New York State Department of Environmental Conservation<br>and The Tandym Group f/k/a ExecuSearch Group; | MOTION TO<br>CERTIFY ORDERS FOR<br>INTERLOCUTORY APPEAL<br><br>Case No. 22 CV 3355<br>Jury Trial: Yes |

## MOTION TO CERTIFY ORDERS FOR INTERLOCUTORY APPEAL

The Plaintiff files this motion as per U.S.C. § 1292 to appeal violations of his Constitutional rights by the New York State Office of the Attorney General ("OAG"), counsel Jessica Preis, and/or New York State Department of Health; and/or the District Court. Time is of the essence. Plaintiff moves to amend the following Orders to certify for interlocutory appeal, as per U.S.C. § 1292(b): ECF Doc. 65 ("Order 65") filed on 3/1/24; and/or ECF Doc. 69 ("Order 69") filed on 3/12/24; and/or ECF Doc. 83 ("Order 83") filed on 5/13/24.

Orders 65, 69, and 83 stem from the actions of the State Defendant and their counsel "Separately" alleging "harassing," and "bullying" misconduct by the Plaintiff in sending (34) thirty-four email communications described as "excessive" and "inappropriate" over the course of (8) eight weeks from 1/1/24 to 2/23/24. Counsel alluded to being "targeted" by alleged misconduct and DOH prompted the Court to restrict Plaintiff's protected speech. This is done in a pattern of bad faith actions taken by the State, especially considering fabricated factual elements in caselaw faking similarities to Plaintiff's facts. The Court adopts the State's overly broad language and dispositions in Orders 65, 69, and/or 83 and fails to establish validity of the claims made by the State, specifying with "reasonable particularity" the allegations for Plaintiff to address, and providing a clear record or specific findings to support their decision.

The questions of law central to appealing Orders 65, 69, and 83 are: whether actions by the State constitute retaliation; whether the District Court abused it's discretion; whether actions by the State and/or District Court contravened Plaintiff's Constitutional rights and privileges, and/or prejudiced the Plaintiff's cause of action. There are substantial grounds for disagreement regarding these questions, and an immediate appeal of Orders would materially advance the resolution of this litigation. Plaintiff respectfully requests the Court to amend Orders 65, 69, and 83 with requisite statutory language required for interlocutory appeal as per 28 U.S.C. § 1292(b).

I. **Standards for Certification of an Interlocutory Appeal**

The Court's approval is necessary for interlocutory appeal of Orders 65, 69, and 83 because these aren't "final decision," as per 28 U.S.C. § 1291, and aren't Orders for which there is statutory authorization for interlocutory appeal, such as an order granting, denying, or modifying an injunction under 28 U.S.C. § 1292(a). "A 'final decision' generally is one which ends the

litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229 (1945). The Court may approve the interlocutory appeal of an order not otherwise appealable when the orders involve controlling questions of law, there is "substantial ground for difference of opinion" concerning the controlling questions of law, and "an immediate appeal from the orders may materially advance the ultimate termination of litigation." 28 U.S.C § 1292(b). The decision to permit an interlocutory appeal under § 1292(b) is within District Court's discretion. *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995); *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 176 (2d Cir. 2009).

To qualify for appeal under § 1292(b), an interlocutory order must state that it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If the original order does not identify a question of law suitable for interlocutory appeal, it may be amended to include the language. Fed. R. App. P. 5(a)(3) ["the district court may amend its order, either on its own or in response to a party's motion, to include the required permission or statement."]. Upon Court's certification, Defendant must petition the Second Circuit for interlocutory review within (10) ten days. 28 U.S.C. § 1292(b).

"[L]aw was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals. The use of Section(s) 1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation." *Koehler v. Bank of Bermuda*, 101 F.3d 863 (2d Cir. 1996) citing *Milbert v. Bison Labs.*, 260 F.2d 431, 433-35 (3d Cir. 1958).

For Orders 65, 69, and 82 of the present action, appeal to the Second Circuit conforms to the requisite standards set forth in § 1292(b). Orders 65, 69 and/or 83 are neither "final decision" under 28 USC § 1291 nor Orders for which are specifically authorized for interlocutory appeal, such as an order: granting, denying, or modifying an injunction under 28 USC § 1292. Courts may approve the interlocutory appeal of an order not otherwise appealable when (1) the order(s) involves controlling questions of law, (2) there is a substantial ground for difference of opinion concerning these legal questions, and (3) an immediate appeal from the order(s) may materially advance the ultimate termination of the litigation. All three are true for the present action.

**II. Orders 65, 69, and/or 83 Involve Controlling Questions of Law Stemming From State Defendant and Counsel Making Deceptive Allegations "Separately" From Legal Arguments and Directing the Court to Issue an Overly Broad Directive.**

Orders 65, 69, and/or 83 involve the controlling questions of law of whether New York State Office of the Attorney General ("OAG"), counsel Jessica Preis, and/or New York State Department of Health violated Plaintiff's rights under the First, Fifth, and/or Fourteenth Amendments; and/or violated the Federal Rules of Civil Procedure; and/or retaliated against Plaintiff by: (1) fabricating factual elements into caselaw while supporting flawed legal conclusions in Memorandum of Law [Docs. 50]; (2) making allegations "separate" from legal arguments, creating ambiguous circumstances and/or improperly shifting the accusatorial burden

onto Plaintiff [Doc. 55]; (3) directing the Court to restrict Plaintiff's protected speech [Doc. 55].

"In determining whether a controlling question of law exists the district court should consider whether: reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases.' *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001). It is clear-cut reversal of district court's opinion would significantly affect the conduct of the action and has precedential value as offending actions were taken by the State and concerns civil liberties.

In Doc. 53 on 2/14/24, Plaintiff made a request for additional amendments to the Amended Complaint, AC Doc. 49 filed on 1/30/24, after the State filed Memorandum of Law in Opposition to Plaintiff's Amended Complaint on 1/5/24, Memo Doc. 50. Therein the State asserted flawed factual and legal assertions *ipse dixit* to prevent Plaintiff from proceeding with the action.[1] The State committed two significant errors in opposing Plaintiff's Amended Complaint in Memo Doc. 50. The first error is claiming cited cases found for no joint employer relationship "despite" the existence of "hiring" or "firing" factors. When in fact, court holdings found for no joint employer relationship in these cited cases because these factors were ***absent***. The second error is relying on unduly stringent legal standards of review, "joint- employer has power to hire and fire," and "A third-party's recommendation to a decision-maker regarding an individual's hiring or firing is insufficient to demonstrate that the third-party is a joint-employer." This is inaccurate.

The Second Circuit has established "factors indicating a joint-employment relationship may vary depending on the case," and any "'relevant factor[ ] may . be considered so long as [it is] drawn from the common law of agency,'" *Felder v. United States Tennis Ass'n*, 27 F.4th 834 (2d Cir. 2022). The State evades the totality of factors alleged in Amended Complaint Doc. 49 and relies on improper legal standards of review. At the motion to dismiss phase it isn't whether a recommendation for termination is "sufficient" or "insufficient," Plaintiff has to establish a joint employer relationship is "plausible" given totality of factors drawn from the common law of agency. Plaintiff passes this threshold beyond speculative given totality of the facts alleged, including the recommendation of a supervisor for termination given other events that transpired.

The State fails to consider the totality of the facts and their application to prevailing standards of legal review. Their defense relies on fabricating factual elements into caselaw to fake similarities in legal conclusions applied to Plaintiff's facts. To refute these flawed assertions, Plaintiff filed a request with the District Court on 2/14/24, Letter Doc. 53, to provide more detailed factors

---

[1] Doc. 50, the State claims in case cited, *Byron v, Bronx Parent Housing Network* 2023 WL 2585824, "City… recommended individuals to be hired and promoted." No such facts are alleged. The case states: "Byron does not even 'allege facts showing that the [City was] involved in the decision[ ] of whether to hire or fire' her." *Id*. They make the same error of fact citing *Fried v. LVI Services*, Inc., Not reported in F.Supp.2d (2011), claiming: "(plaintiff failed to plausibly allege defendant company was 'joint employer' even though company officers sat on employer's board of directors and advocated for termination of plaintiff)." No such facts are alleged, Plaintiff plead company officers wanted to terminate his Employment Contract in favor of a "consulting agreement." There was also a failure to allege facts showing employer was involved in hiring or firing decisions in *Felder v. United States Tennis Ass'n*, 27 F.4th 834 (2d Cir. 2022), the third cited case in State Defendant's Memorandum of Law, Doc. 50.

indicating significant control exerted by defendant. Defendants were directed to respond by the Court in Doc. 54, on 2/16/24. The appeal centers on this reply by DOH and their counsel, Jessica Preis for the OAG, filed as Letter Doc. 55 on 2/26/24. Specifically, in reference to "separate" issues raised distinct from the merits of the litigation, alleging "harassment," "bullying," and "inappropriate comments" by Plaintiff in emails sent to counsel.[2]

Plaintiff raised objections to these actions while filing Reply Doc. 58 the next business day on 2/26/24, and making the first request to strike these offensive allegations from the record. In Endorsement Doc. 57 filed on 2/26/24, Presiding District Court Judge Edgardo Ramos denied Plaintiff's request for additional amendments, instead compelling Plaintiff to provide a testimonial statement in defense of allegations made by the State.[3] While issuing Endorsement Doc. 57, the Court fails to establish the validity of the claims made by the State or specify with "reasonable particularity" the allegations for Plaintiff to address. In compelled replies, Plaintiff continued objecting to the State making false allegations and defend against these allegations by relaying factual assertions and disclosing private information that he prefers keeping private.

The Court filed Order 65 on 3/1/24 directing Plaintiff to "consolidate his requests for information to the extent possible so as to limit his communications with opposing counsel." In the same Order 65, Defendants were directed to respond "to Pasha's request for reconsideration, Doc. 61, his request to add substantive arguments to his reply (amending the reply), Doc. 62, and his request to expedite the case, Doc. 63." In issuing this Order the Court failed to provide a clear record or specific findings to support their decision in limiting Plaintiff's protected speech. The Court also failed to address Plaintiff's first request to strike from Reply Doc. 58.

After Defendants submit their replies to Plaintiff's requests, the District Court denied Plaintiff's requests in Order 69 on 3/12/24. Plaintiff subsequently filed Objection Doc. 71 on 3/13/24, and Issues Doc. 74 on 4/22/24 as objections. Also in Doc. 74, the Plaintiff made his second request to strike offending documents and challenging the State to produce excerpts from emails that qualify as "harassing," "bullying," or "inappropriate," especially directed to counsel in a personal capacity. The Court directed a reply by Defendants in Endorsement Doc. 75 on 4/24/24. In Letter Doc. 80 filed 5/2/24, State Defendant claims, "DOH's Letter was not written to 'falsely accuse,' 'embarrass' or 'prejudice' Plaintiff, nor was it written to accuse Plaintiff of any criminal wrongdoing." They retract any misconduct potentiating criminality, instead opting to characterize the alleged misconduct as "brash," "discourteous," and "at the very least uncivil."

---

[2] Letter Doc 55: "Separately, DOH respectfully requests that the Court schedule a conference with the parties to discuss Plaintiff's communications with defense counsel, which are becoming excessive and harassing. Since the beginning of the year, I have received approximately 34 emails from Plaintiff. See Compiled Emails from 2024 annexed hereto as Exhibit A. Plaintiff contacts me on weekends, late at night and early in the mornings, and often sends as much as five emails in one day. For example, defense counsel received five separate emails from Plaintiff between the hours of 11:30 p m. on January 28, 2024 and 1:00 a m. on January 29, 2024. Moreover, Plaintiff's communications are oftentimes inappropriate and approach bullying. DOH respectfully requests that the Court direct Plaintiff to correspond with opposing counsel in a reasonable and appropriate manner, and limited to when the litigation necessitates such communication."

[3] Endorsement Doc. 57: "respond to the Court on why an order directing him to correspond with defense counsel in a reasonable manner limited to when litigation requires such communication should not issue."

State Defendant claimed the purpose of Doc. 55 was "simply to limit Plaintiff's excessive communications." This drastic change in severity of claims was made after litigation proceedings were already prejudiced. This retraction is insufficient as they attempt to narrow their broad allegations retroactively and their deceptive use of counsel as a "victim" went unsubstantiated. The excerpts cited confirm emails sought to redress grievances pertaining to litigation.

This situation created by the State is the epitome of the reason why Fifth Amendment protections were created. "Rights declared in words might be lost in reality. And this has been recognized." *Weems v. United States, 217 U.S. 349 (1910).* By making overly broad allegations, the State creates "ambiguous circumstances" that failed to consider the foreseeable harm to Plaintiff's protected freedoms. The timing of the allegations are also suspect. Counsel complains of emails received at the end of January yet made no complaints in their filing of Doc. 50 on 2/5/24. Counsel also complains the time at which the emails were received, however Plaintiff sent multiple emails at similar hours for over a year. Deceptive allegations were only made after Plaintiff request to add amendments to disprove their flawed legal arguments in Memo Doc. 50.

State Defendant and counsel interjected allegations after reasserting the same flawed legal arguments from Memo Doc. 50 and made these allegations "Separately." The ambiguity of their allegations was exacerbated by framing it as Plaintiff personally targeting counsel. The allegations alternate between speaking on behalf of State Defendant and speaking in the first person. ["I have received," "Plaintiff contacts me," and "DOH respectfully requests."]. No such speech in the first person [using "I" or "me"] can be found in any of counsel's previous filings. These emails were sent to the New York State Office of the Attorney General and were never addressed to counsel in individual or personal capacities. In Doc. 80, counsel fails to substantiate these claims as none of the emails relay communications addressed personally.

Additionally, misconduct such as "bullying" and "harassment" potentiates criminality. Such baseless allegations perpetuate racist stereotypes associated with "terrorists" and target Plaintiff's protected characteristics. This is evidence of ongoing retaliation by State Defendant following the discriminatory termination of Plaintiff's employment. The State Attorney General can't reasonably make such claims in this context because they serve the public and email communications are part of their duties. However by deceptively making counsel, personally, as the "target" using the first-person ["I have received," and "Plaintiff contacts me"] State Defendant mischaracterizes the intent of the emails and the context in which they are conveyed. Alleging counsel as a "victim" in a personal capacity deceptively shifts the accusatorial burden onto the Plaintiff to defend against attacks on his character. This is done to indirectly defend the illegal termination of the Plaintiff by associating him with misconduct potentiating criminality.

This distracts from the merits of the claims, unduly delays litigation, and prejudices the case. These ambiguous circumstances weren't created by counsel and State Defendant to "simply limit Plaintiff's excessive communications." The timing of the allegations and the verbiage of the request to the Court betray their intent as this approach wasn't "least restrictive means to further their articulated interest." *McCutcheon v. FEC*, 572 U.S. 185 (2014) citing *Sable Communications of Cal., Inc. v. FCC*, 492 U. S. 115, 126 (1989). They failed to promptly notify

or warn Plaintiff directly regarding any issues with the emails being sent or notify the Court sooner, and/or without making deceptive allegations. Had counsel truly been perturbed by emails sent in January she would have contacted the Court sooner "Separately" in a filing, or informed the Court in Memo Doc 50 filed on 2/5/24. Allegations were made on 2/23/24 after Plaintiff provided the Court with additional indicia of control exerted by Defendants which further contradicted the State's faulty assertions. If communications were truly offensive or excessive they should be limited before filing a reply with legal arguments opposing Plaintiff's request.

 Their directive to the Court proves overly broad and fails to outweigh the foreseeable harm to the furtherance of Plaintiff's protected freedoms. State Defendant claims the "proper state interest" is to "limit excessive communications." Yet this interest doesn't warrant falsely asserting misconduct comprising a "highly selective group inherently suspect of criminal activities." *California v. Byers*, 402 U.S. 424 (1971). The State Attorney General has jurisdiction over criminal matters in New York State, the possibility for incrimination is substantial. It isn't about whether the State, by alleging potential criminal misconduct "subject[s] Pasha to criminal liability," it is a matter of "reasonable apprehension" by the Plaintiff taken from the "individual's point of view of a 'real' and not 'imaginary' risk of self-incrimination." *Id.* As evidenced by Plaintiff's subsequent filings, there was "reasonable apprehension" injurious disclosure could result "which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States*, 341 U.S. 479 (1951).

 Therefore, the New York State Attorney General, counsel Jessica Preis, and/or New York State Department of Health violated Plaintiff's rights under the First, Fifth, and/or Fourteenth Amendments; and/or violated the Federal Rules of Civil Procedure; and/or continue retaliatory conduct against Plaintiff. This is done in bad faith by: fabricating factual elements into caselaw to fake similarities in legal conclusions applied to Plaintiff's facts, Memorandum Doc. 50; creating ambiguous circumstances and/or shifting the accusatorial burden onto Plaintiff with overly broad and unsubstantiated allegations, Letter Doc. 55; and/or requesting the Court to issue an overly broad directive that fails to outweigh the foreseeable harm to Plaintiff's protected freedoms and privileges [ECF Doc. 55].

 The State is without a valid defense for illegal termination of Plaintiff's employment and retaliation under the charges of Title VII and NYSHRL Article 15. State Defendant and counsel assert allegations to distract from their flawed factual and legal assertions. Reversal of district court's opinion would significantly affect the conduct of the action by allowing amendments to counter the State's flawed legal and factual assertions in Memo Doc. 50. It will also strike offending documents filed with the Court in bad faith to remedy violations of Plaintiff's Constitutionally protected rights and privileges, and privacy. These actions serve as evidence of continuing discriminatory retaliation against Plaintiff by the State and will materially advance the ultimate termination of this litigation, delayed since the State made deceptive allegations.

 Therefore there exists controlling questions of law on whether above actions taken by the State contravened Plaintiff's Constitutional rights and privileges, violated the Federal Rules of Civil

Procedure, unduly prejudiced the course of litigation; and/or constitute continuing acts of retaliation taken against the Plaintiff for bringing action for illegal termination of his employment. This case presents a difficult issue of first impression novel to the Second Circuit.

 It also noteworthy Plaintiff was physically assaulted over the head with his back turned on 6/30/22. There was another incident on 9/20/23 where Plaintiff was shown a handgun in a threatening manner unprovoked while in the course of daily activity. Although there has been no direct evidence of involvement by anyone connected to this action, continuing bad faith actions by defendants cannot rule this possibility out. These were both unprovoked and occurred after Plaintiff contacted the EEOC on 5/7/21 and after filing the original Complaint on 4/22/22. The NYPD were disinterested in prosecuting those involved despite photo evidence and a license plate number, making civil action difficult. It can't be stated that any individual connected to this action is involved, however the possibility of retaliation can't be ruled out either.

 Regardless, one reason for Plaintiff emailing State Attorney General concerned the assault. Instead the OAG has sent mailings and spams calls for the medical bill from the assault in an amount over $10,000. Despite Plaintiff requesting time and paperwork to apply for aid, they fail to provide any options and instead threaten civil action. These facts are memorialized should involvement tied to this action be substantiated in these or future acts, given bad faith actions.

### III. Orders 65, 69, and/or 83 Involves Controlling Questions of Law Pertaining to District Court's Decisions in the Management of Litigation

 Orders 65, 69, and/or 83 involve the controlling questions of law of whether the District Court violated Plaintiff's First and/or Fifth Amendment rights; violated the Federal Rules of Civil Procedure; abused its discretion; and/or acted outside its Article III judicial functions by:
(1) compelling Plaintiff to provide testimonial statements in response to allegations made by State Defendant and/or counsel; (2) preventing or delaying Plaintiff from including substantive arguments in support of filing an Amended Complaint; (3) preventing Plaintiff from making additional amendments to the Amended Complaint, ECF Doc. 49; (4) denying Plaintiff's request to expedite litigation proceedings; (5) and/or denying Plaintiff's request to strike offending statements and/or documents stemming from ECF Doc. 55.

 Until bad faith allegations in Doc. 55, Judge Ramos was effectively adjudicating the action in a fair manner. The management of litigation has been materially prejudiced since the State made deceptive allegations, as evidenced by Endorsement Doc. 57. Therein, the Court directs Plaintiff to: "respond to the Court on why an order directing him to correspond with defense counsel in a reasonable manner limited to when litigation requires such communication should not issue." This wasn't a requirement by the Court to comply with a regulatory or noncriminal statute. *California v. Byers*, 402 U.S. 424 (1971). Doc. 57 compels Plaintiff to reply with communication that "relates factual assertions" or "discloses information," *Hiibell* 542 U.S. 177 (2004), relating to misconduct alleged by the State belonging to "a highly selective group inherently suspect of criminal activities," *California v. Byers*, 402 U.S. 424 (1971), with counsel personally targeted as "victim." [Doc. 55 statements by counsel: "I have received," "Plaintiff contacts me,"]

The Court doesn't specify with "reasonable particularity" in Doc. 57 which of the scurrilous allegations made by the State in Doc. 55 the Plaintiff should address and fails to establish whether Plaintiff's communications with counsel were unreasonable to begin with. *United States v. Greenfield*, 831 F.3d 106 (2d Cir. 2016). The act of producing a reply in this instance could inadvertently be construed as providing evidence of "criminal intent" in defense of false allegations. These "ambiguous circumstances" could "ensnare" Plaintiff by "furnishing a link in the chain of evidence" needed for federal prosecution. *Slochower v. Board of Education*, 350 U.S. 551 (1956). Plaintiff was in "reasonable apprehension" from an individual "point of view of a 'real' and not 'imaginary' risk of self-incrimination." *California v. Byers*, 402 U.S. 424 (1971).

After Plaintiff memorialized objections in his compelled replies to Doc. 57, the Court issued Order 65 directing Plaintiff to "consolidate his requests for information to the extent possible so as to limit his communications with opposing counsel." The Plaintiff made further objections and requests for reconsideration, to which the Court replied by issuing Order 69 denying Plaintiff's requests. In ECF Doc. 74 the Plaintiff made his second request to strike offending documents.

The Court directed Defendants to reply in ECF Doc. 75, and exhibited potential evidence of prejudice towards Plaintiff's request by referencing it, as "the letter's request." All previous requests by Plaintiff were properly referred to as "Pasha's requests" and by referring to this request as "the letter's request," it suggests a marginalization of the request and dehumanization of the Plaintiff. This is contrary to principles of fairness and respect essential to judicial process. Plaintiff promptly brought this to the attention of the Court and the error has not occurred since. However just because Plaintiff is *pro se* such an oversight should not be allowed without an explanation and/or correction especially given the discriminatory nature of the cause of action.

In ECF Doc. 80 filed 5/2/24, State Defendant omitted the discriminatory allegations of misconduct, opting to characterize the conduct as "brash," "discourteous," and "at the very least uncivil." State Defendant claimed the purpose of Doc. 55 was "simply to limit Plaintiff's excessive communications." This drastic change in severity of claims was made after unfairly prejudicing the normal course of litigation. Order 83 filed on 5/13/24, denied Plaintiff's second request to strike offending documents, including Doc. 55, from the record and also denied his request to add substantive arguments in support of the Amended Complaint. The Court stated, "Following his response, the Court eventually directed Pasha to 'consolidate his requests for information to the extent possible so as to limit his communications with opposing counsel.' Doc. 65. Accordingly, document 55 was a document that served as a basis for judicial decision-making. Therefore, the presumption that this document is subject to public inspection applies.".

Endorsement Doc. 57; and Orders 65, 69, and/or 83 were issued at the Court's discretion following deceptive actions by the State, as outlined previously. While the Court has authority to issue orders to limit communication between parties, this is done to ensure fair litigation. *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981). While adopting State's positions, the Court demonstrates: an abuse of discretion; violation of Federal Rules of Civil Procedure; deviation from Article III functions; unfair prejudice towards Plaintiff and merits of his claims. The Court

also exhibits potential evidence of prejudice towards Plaintiff in Endorsement Doc. 75.

 The Court abuses it's discretion by compelling testimonial statements in response to a potential injurious disclosure, and failing to establish if the documents "are in fact what they purport to be" and specifying with "reasonable particularity" the specific allegations to address. The Court failed to do so despite being provided a copy of all (34) thirty-four emails as an exhibit to Doc. 55. This creates ambiguous circumstances where Plaintiff is stopped in the course of litigation; is "Separately" accused of misconduct belonging to "a highly selective group inherently suspect of criminal activities;" then compelled to provide testimonial statement in defense of "activities." This is aggravated by the State describing "activities" that are inherently discriminatory against Plaintiff's protected characteristics after being terminated for objecting to being called "Taliban." It is also a retaliatory tactic absent valid legal arguments in defense against claims.

 Despite counsel raising these issues "Separately," the Court shift it's attention from the merits of the cause of action by denying Plaintiff's reasonable requests. Rule 15(a) requires that courts "freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2). Then violated due process by shifting accusatorial burden onto Plaintiff after issuing a directive for Plaintiff to reply without establishing validity of claims or specifying which allegations to address. Given circumstances, Plaintiff was placed in reasonable apprehension injurious disclosure could result.

 The Court would later abuse its discretion and infringe Plaintiff's protected speech by issuing Order 65, "directing Plaintiff to "consolidate his requests for information to the extent possible so as to limit his communications with opposing counsel." The Court failed to establish the validity of the States claim or specify with "reasonable particularity" the allegations to address, then the Court infringes on Plaintiff's rights by issuing Order 65 without basing it on "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 254 (S.D.N.Y. 2020), quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981).

 In Order 83 the Court adopts the State's position from Doc. 80 and states: "Contrary to Pasha's suggestions, the Court finds that the reference to Pasha's emails in document 55 were not meant to falsely accuse him of criminal conduct or to otherwise prejudice him. Instead, the purpose of the letter was to limit Pasha's excessive communications with opposing counsel." However the State and the Court failed to specify this when compelling testimony and limiting the Plaintiff's freedom of speech when issuing Endorsement Doc. 57 and Order 65, respectively. When the Plaintiff moves to strike these offending documents, the Court denies Plaintiff's request because they served as basis for "judicial decision-making" in issuing Order 65. The Court fails to consider this "judicial decision-making" was an abuse of discretion because it fails to provide a "clear record and specific findings that reflect a weighing of the need for limitation and the potential interference with the rights of the parties." Instead "excessive communications" are cited after the fact in Doc. 83 in an attempt to narrow broad allegations retroactively.

The District Court also abused its discretion and/or acted outside of Article III functions when denying Plaintiff's request to strike offending documents. The purpose underlying the presumption of access to these documents flows from documents that play no role in the performance of Article III functions. The emails don't qualify as "judicial documents," as they can't even be considered "discovery," so they lie even further beyond the presumption's reach. *U.S. v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995). These documents aren't "derived from a necessary corollary of the capacity to attend relevant proceedings," as they were made "Separately" from legal arguments. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). Statements in Doc. 55 created "ambiguous circumstances" that violated Plaintiff's constitutional rights protected by the Fifth and Fourteenth Amendments. *California v. Byers*, 402 U.S. 424 (1971).

"Tension between the State's demand for disclosures and the protection of the right against self-incrimination is likely to give rise to serious questions. Inevitably these must be resolved in terms of balancing the public need on the one hand, and the individual claim to constitutional protections on the other; neither interest can be treated lightly." *Id.* "[D]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re New York Times Co.*, 828 F.2d at 116 (2d Cir. 1987). In this case the countervailing factors, including the rights guaranteed by the Constitution that were violated by their filings overcome the presumption of access. The District Court abused its discretion in giving more deference to the privilege of public access over the countervailing factors raised by the Plaintiff. These countervailing factors include:

(1) Court filings by the State interjects "harassment" and "bullying," "Separately" from legal arguments opposing Plaintiff's requests. (2) Public access to unsubstantiated allegations damages Plaintiff's reputation and are discriminatory in nature. (3) The overly broad manner in which these allegations are alleged do not afford Plaintiff a fair opportunity to respond to allegations. (4) This conduct by the State was done for "personal motives," to improperly discredit Plaintiff's cause of action absent a legal defense; (5) and as continuing retaliation against Plaintiff. (6) The State can't defend against the facts of the case with valid legal arguments so they fabricate caselaw, (7) and/or fabricate allegations to distract from the merits of the action. (8) These bad faith actions by State Defendant impair in a material way by delaying the performance of Article III functions and delaying the timely administration of proceedings. (9) Plaintiff is deprived of fair judicial proceedings. (10) The emails themselves aren't "discovery," therefore lie beyond the reach of presumption of access. (11) The Court fails to establish the validity of the allegations made by the State and/or specify with "reasonable particularity" the allegations Plaintiff has to address in compelled testimony. (12) The Court infringed on Plaintiff's rights by issuing Order 65 without basing it on "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." (13) The Court improperly shift the accusatorial burden by issuing a directive and Orders failing to consider the foreseeable harm to Plaintiff's protected freedoms.

Endorsement Doc. 57; and Orders 65, 69, and/or 83 were issued at the Court's discretion following deceptive actions by the State. These deceptive actions unduly influenced the Court's

decision-making leading to an abuse of discretion, infringements of Plaintiff's Constitutional rights, taking actions outside Article III judicial functions, and violating the Federal Rules of Civil Procedure. In Endorsement 57 the Court compelled testimony of the Plaintiff without specifying with "reasonable particularity" as to the allegations to address and whether the allegations are "what they purport to be." The Court errs in compelling testimony then issuing Order 65 without "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." The Court erred in issuing 69 by not properly considering Plaintiff's reasonable requests. The Court erred in issuing Order 83 because it cites "judicial decision-making" that was based on a failure to cite a clear record and findings in their judicial decision-making, and fails to properly balance the weight of countervailing factors against the standard weight afforded the presumption of access.

Therefore there exists controlling questions of law pertaining to District Court's decisions in the management of litigation, raising substantial doubt Orders 65, 69, and 83 were correct.

### IV. Substantial Ground For Difference of Opinion Exists Concerning Controlling Questions of Law

In the present action a substantial ground for difference of opinion exists concerning the controlling questions of law, previously presented. The questions of law central to appealing Orders 65, 69, and 83 are: whether actions by the State constitute retaliation; whether the District Court abused it's discretion; whether actions by the State and/or District Court contravened Plaintiff's Constitutional rights and privileges, and/or prejudiced the Plaintiff's cause of action.

A substantial ground for difference of opinion occurs when: "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Capitol Records, LLC v. Vimeo,* LLC, 972 F.Supp.2d 537, 551 (S.D.N.Y.2013). "[T]o satisfy this prerequisite, there must be "substantial doubt" that the district court's order was correct." *Aristocrat Leisure Ltd. v. Deutsche Ba*nk, 426 F. Supp. 2d 125, 129 (S.D.N.Y. 2005). "Where the decision under review is in conflict with other decisions within the same district substantial ground for difference of opinion may exist." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 540 (S.D.N.Y. 2014) citing, e.g., Glatt v. Fox Searchlight Pictures, Inc., No. 11 Civ. 6784(WHP), 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013)

"[T]he mere fact that a disputed issue is a question of first impression is insufficient to demonstrate substantial grounds for a difference of opinion." Rather, "[i]t is the duty of the district judge faced with a motion for certification to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *N.F.L. Ins. Ltd. By Lines v. B&B Holdings, Inc.,* No. 91 CIV. 8580 (PKL), 1993 WL 255101, at *2 (SDNY July 1, 1993). This case does provide factual circumstances and the application of controlling law that is "particularly difficult," presents issues of "first impression," and the strength of the arguments suggest there is truly *substantial* ground for dispute, as there is "substantial doubt" Orders 65, 69, and 83 were correct.

Plaintiff communicated in emails with defense counsel, an assistant to the State Attorney General, representing State Defendant New York State Department of Health for an employment

discrimination action brought before the Court after Plaintiff's illegal termination. The emails sought to redress grievances pertaining to litigation for Plaintiff's cause of action. Counsel, "separate" from the merits of the action, alleged misconduct by Plaintiff that rises to the level of "criminal" with intent for sending these emails. The New York State Attorney General is a criminal justice entity and can't reasonably claim "harassment," or "bullying" in this context as a basis of limiting freedom of speech given the actual nature of the emails and the intent of the Plaintiff in sending them. Allegations were made by defense counsel referencing actions by the Plaintiff in the first person, ["Plaintiff sends me," "I received"], to allude to being a "target."

These ambiguous circumstances weren't created by counsel and State Defendant to "simply limit Plaintiff's excessive communications," as they claim. The State referenced emails made at the end of January. Yet they failed to communicate any issues with Plaintiff's communications in filing on 2/5/24 prior to Plaintiff's request on 2/14/24 to add amendments to refute flawed legal and factual conclusions made in the State's Memo Doc. 50. Also, counsel fails to provide any excerpts that substantiate her claims of being contacted personally. In adopting the State's dispositions, the Court issues: Endorsement 57 compelling testimonial statements in defense of allegations by the State; Order 65 limiting Plaintiff's protected speech; Order 69 denying Plaintiff's requests for reconsideration, to add substantive arguments to the Reply, and expedite litigation; and Order 83 denying Plaintiff's request to strike documents from the record and to add substantive arguments to his Motion to amend his complaint. Rule 15(a) requires that courts "freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2).

Also in Order 83 the Court attempts to retroactively adopt the State's position from Doc. 80 and states: "the purpose of the letter was to limit Pasha's excessive communications with opposing counsel." However, the Court failed to establish the validity of the State's allegations and failed to specify with "reasonable particularity" that "excessive nature of communications" was the issue to be addressed when compelling testimony and infringing on Plaintiff's civil liberties in issuing Endorsement Doc. 57 and Order 65, respectively. Furthermore, subsequent reasonable requests by the Plaintiff were denied in Orders 65 and 69. When the Plaintiff moves to strike offending documents, the Court denies Plaintiff's request in Order 83. The Court fails to realize this Order was an abuse of discretion because they failed to provide "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 254 (S.D.N.Y. 2020). Also the Court exhibited evidence of potential prejudice by marginalizing Plaintiff's request by referring to it as the "letter's request," thereby dehumanizing Plaintiff in Doc 75.

The Court denied Plaintiff's request to strike because offending Doc 55 served as basis for "judicial decision-making" in issuing Order 65. However, the purpose underlying the presumption of access to these documents flows from documents that play no role in the performance of Article III functions. The emails don't qualify as "judicial documents," as they can't even be considered "discovery," so they lie even further beyond the presumption's reach. *U.S. v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995). These documents aren't "derived from a necessary corollary of the capacity to attend relevant proceedings," as they were made "Separately" from

legal arguments. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). Statements in Doc. 55 created ambiguous circumstances that violated Plaintiff's due process rights protected by the Fifth and Fourteenth Amendments. This isn't about whether this "subject[s] Pasha to criminal liability," it is a matter of "reasonable apprehension" by the Plaintiff taken from the "individual's point of view of a 'real' and not 'imaginary' risk of self-incrimination. In denying Plaintiff's request, the Court failed to properly weigh Plaintiff's countervailing consideration against the weight afforded the presumption of access.

Therefore, the actions of the State and decision-making in management of litigation by the District Court and the application of controlling laws to these circumstances presents a particularly difficult issue of first impression novel to the Second Circuit. There is also truly *substantial* ground for dispute, as there is "substantial doubt" Orders 65, 69, and 83 were correct. These Orders were issued at the Court's discretion following deceptive actions by the State. These deceptive actions unduly influenced the Court's decision-making leading to an abuse of discretion, infringements of Plaintiff's Constitutional rights, taking actions outside Article III judicial functions, and violating the Federal Rules of Civil Procedure.

## V. Immediate Appeal of Orders 65, 69, and/or 83 Would Materially Advance the Ultimate Termination of This Litigation

Applying § 1292 to the present action requires consideration of the statutory purpose for its enactment. "[O]ne of the chief concerns of Section 1292 is the efficiency of the federal court system, and efficiency is of particular concern in large complex cases." *Segedie v. The Hain Celestial Grp., Inc.*, No.L4-CV-5029NSR, 2015WL5916002, (SDNY 10/7/15). In considering whether to certify Orders with requisite statutory language for appeals, the Court must consider whether an appeal is likely to materially advance the ultimate termination of litigation. This factor is closely related with the requirement that the underlying Orders present questions of law, "controlling one(s), the prompt resolution of which could materially advance the ultimate termination of the litigation." *Marisol A. by Forbes v. Giuliani*, 104 F.3d 524, 529 (2d Cir. 1996).

Comprising the controlling questions of law are the issues of whether deceptive actions by the State (1) contravened on Plaintiff's Constitutional rights and privileges, (2) caused undue prejudice on the present action, (3) violated Federal Rules of Civil Procedure, and/or (4) constitute continuing acts of discriminatory retaliation taken against the Plaintiff for bringing action for illegal termination of his employment. Whether District Court, by issuing Orders 65, 69, and/or 83 (5) contravene on Plaintiff's Constitutional rights and privileges, (6) abuse their discretion, (7) prejudice the Plaintiff's cause of action; and/or (8) whether the District Court was acting outside of Article III judicial functions and/or abusing its discretion when balancing the overwhelming countervailing factors against the weight afforded the presumption of access when deciding to deny Plaintiff's request to strike offending documents filed on the Court's docket voluntarily by the State and subsequent compelled testimony filed by the Plaintiff.

The prompt resolution of these controlling questions of law would materially advance the ultimate termination of litigation. In doing so the Plaintiff would make amendments to the

Amended Complaint Doc. 49. These amendments would further refute the State's flawed legal and factual *ipse dixit* assertions and provide additional indicia of significant control exerted by the State further confirming the existence of a joint-employer relationship. It would also affirm the State's deceptive actions are retaliatory acts of discrimination against Plaintiff. This occurs after he was illegally terminated after objecting to being called "Taliban" twice and warning his Supervisor another instance of such behavior would get reported, AC Doc. 49.

By resolving the controlling questions of law pertaining to the actions of the District Court in finding for an abuse of discretion, actions taken outside of Article III judicial functions, and/or prejudice in management of litigation this would also materially advance the ultimate termination of litigation. It would allow Plaintiff to make necessary amendments to the Amended Complaint, as described prior. Also, it would strike offending documents thereby protecting Plaintiff's privacy interests and preserving his Constitutional rights and privileges.

## VI. Conclusion

Plaintiff respectfully request the Court amend its Orders 65, 69, and 83 to state these Orders involve controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from these Orders may materially advance the ultimate termination of the litigation" as per 28 U.S.C. § 1292(b). This action can be taken by the District Court on its own or in response to this Motion. The above stated reasons supports amending these Orders accordingly to ensure efficiency of the federal courts system. Due course pertaining Plaintiff's cause of action has been severely delayed by these plain error actions by the State and the District Court.

## VII. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this motion: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A. For Parties Without an Attorney
I agree to provide the Clerk's Office with any changes to my address where case related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Signature of Plaintiff: [signature]
Date of signing: July 1, 2024
Printed Name of Plaintiff: Talha S. Pasha