UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TALHA PASHA,

                Plaintiff,

-*against*-

NEW YORK STATE DEPARTMENT OF
HEALTH *and* THE EXECUSEARCH
GROUP,

                Defendants.

**ORDER**

22-cv-3355 (ER)

RAMOS, D.J.

    Talha Pasha, who is *pro se*, brings this action against the New York State Department of Health (the "DOH") and the ExecuSearch Group,[1] alleging employment discrimination on the basis of his race, religion and national origin in violation of Title VII of the Civil Rights Act of 1964. Doc. 1. Before the Court is Pasha's motion to amend the complaint. Doc. 42. For the reasons set forth below, Pasha's motion is GRANTED in part and DENIED in part.

I.   BACKGROUND

    **A. Factual Background**[2]

    Pasha is a Muslim man of South Asian descent. ¶ 1. On April 12, 2020, ExecuSearch, a staffing agency, hired him as an Administrative Assistant. ¶ 2. On the same day, Pasha was assigned to work at the DOH, specifically at a COVID-19 testing site located at Stony Brook

---

[1] The ExecuSearch Group is currently known as the Tandym Group.

[2] The following facts are based on the allegations in the complaint, which the Court accepts as true for purposes of the instant motion. *See, e.g., Koch v. Christie's Int'l PLC*, 699 F. 3d 141, 145 (2d Cir. 2012). Unless otherwise noted, citations to "¶ _" refer to the complaint, Doc. 2.

University Hospital in Stony Brook, New York.  *Id*.  On June 5, 2020, Pasha alleges that his site supervisors, "Brian [Parente] and Deb," granted him verbal permission to attend a nearby mosque for Friday prayers.[3]  ¶ 6.  Two to three weeks later, Parente informed Pasha that he was no longer allowed to leave for Friday prayers.  ¶ 8.  However, Pasha alleges other workers at the test site were allowed to leave at will.  *Id.*

Parente then presented Pasha with the option of switching his Friday shift with another employee, and Pasha attempted to switch shifts with a coworker so that he would no longer work on Fridays and would work on Wednesdays instead.  ¶¶ 9–10.  Parente approved the switch and told Pasha to contact ExecuSearch.  ¶ 11.  Pasha emailed ExecuSearch on June 15, 2020 to request permission to switch his Friday shift in order to accommodate his religious practices.  ¶ 12.

However, when Pasha later called ExecuSearch and spoke to Anida Fregjaj, a recruiter, she denied Pasha's request.  ¶ 13.  Instead, she told Pasha that he would have to give up his Friday shift and presented no alternative options.  *Id*.  Fregjaj also told Pasha that, going forward, ExecuSearch would implement a policy of not allowing employees to switch shifts.  ¶ 14.  Pasha alleges that this policy was never enforced.  *Id*.  After Parente was notified about ExecuSearch's denial of Pasha's request, he refused to intervene, stating it wasn't his concern.  ¶ 14.  Thereafter, Parente did not allow Pasha to attend Friday services.  ¶¶ 15–16.

On another occasion,[4] Pasha told his colleagues that he preferred to be addressed by his last name due to previous "experiences with others misusing his name in a discriminatory

---

[3] In Pasha's papers, he notes that Brian's full name is Brian Parente.  Doc. 64 at 13.

[4] The complaint does not state when this conversation took place.

manner," including by calling him "Taliban." ¶¶ 18–19. On April 25, 2021, Bob McCormick,[5] one of Pasha's supervisors, addressed him as "Taliban." ¶ 24. Pasha informed McCormick that his statement was "not funny" and that he "despised being associated" with the Taliban, but McCormick proceeded to "laugh it off." *Id.* That same day, McCormick called Pasha Taliban again, this time in front of another co-worker named Judy. ¶ 25.

Sometime thereafter, Pasha informed McCormick that if he called him Taliban again, he would notify Parente and ExecuSearch in order to file a formal complaint. ¶ 28. Following this conversation, Pasha was terminated by the DOH for unprofessionalism.[6] ¶ 29. ExecuSearch did not provide Pasha with additional details about his termination, nor offer him other job opportunities. *Id.* Pasha alleges that neither the DOH nor ExecuSearch gave him any verbal or written warnings about his work performance or lack of professionalism during his tenure. ¶ 30.

### B. Procedural Background

Pasha filed this action on April 25, 2022, alleging that the Defendants discriminated against him based on his Asian race, Islamic religion, and Pakistani national origin, and retaliated against him for complaining about discrimination. Doc. 2. That same date, Pasha requested leave to proceed *in forma pauperis* ("IFP"). Doc. 1. The Court granted Pasha's IFP request on April 26, 2022. Doc. 3. ExecuSearch filed its answer on November 7, 2022. Doc. 15. The DOH filed its answer on February 1, 2023. Doc. 22. Six months later, on August 10, 2023, Pasha filed a motion seeking to amend his complaint. Doc. 32. At a pre-motion conference held on September 22, 2023, the Court referred the parties to mediation, and stated if mediation was successful, a briefing schedule would be set for Pasha's motion to amend.

---

[5] While the complaint only refers to "supervisor Bob," DOH's opposition explains the coworker's full name is Bob McCormick. Doc. 50 at 2.

[6] The date of Pasha's termination is not alleged.

Mediation was unsuccessful, and on December 4, 2023, Pasha filed a motion for leave to file an amended complaint. Doc. 42. The next day, the Court set a briefing schedule on Pasha's motion. Doc. 41.

On January 9, 2024, Pasha filed another proposed amended complaint. Doc. 44. Less than two weeks later, on January 22, 2024, Pasha filed a letter with the Court requesting that "corrections" be made to his pleading and included a further revised version. Doc. 47. On January 26, 2024 the Court granted Pasha's request and directed him to resubmit the proposed amended complaint with corrections. Doc. 48. Pasha filed a final version of the proposed amended complaint on January 30, 2024. Doc. 49.

In the proposed amended complaint, Pasha seeks to add the Department of Energy Conservation (the "DEC") as a defendant. *Id.* at I(B). He alleges that ExecuSearch placed him to work with the DOH "alongside the New York State Department of Environmental Conservation and other state agencies." *Id.* ¶ 4. He also alleges that McCormick works for the DEC and claims that, per his conversation with an ExecuSearch recruiter, McCormick had "input towards" the decision to terminate him. *Id.* ¶¶ 32–33. The proposed amended complaint asserts that Defendants discriminated against Pasha on the basis of his gender and "Punjabi, Kashmiri, [and] Pashtun" ethnicity. *Id.* at III(D)(4) & (5). It asserts new claims pursuant to 42 U.S.C. § 1981 ("§ 1981") for discrimination based on "race [and ethnicity]" and the New York State Human Rights Law ("NYSHRL") for "race, color, gender, religion, national origin, [and] ethnicity." *Id.* at II. At another portion of the proposed amended complaint, Pasha clarifies that his race is Asian. *Id.* ¶ 36.

## II. LEGAL STANDARD

### A. Motion to Amend

Rule 15(a)(2) allows a party to amend its complaint pursuant to the other party's written

4

consent or the court's leave and provides that a "court should freely give leave [to amend] when justice so requires." Motions to amend are ultimately within the discretion of the district court judge, *Foman v. Davis*, 371 U.S. 178 (1962), who may deny leave to amend for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (internal quotation marks omitted)). This is a permissive standard since the Federal Rules "accept the principle that the purpose of pleading is to facilitate a proper decision on the merits" of the case. *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

An amendment to a pleading is futile if the proposed claim would not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002), *abrogated on other grounds by Ateres Bais Yaakov Academy of Rockland v. Town of Clarkstown*, 88 F.4th 344 (2d Cir. 2023). To withstand a motion to dismiss, the plaintiff must allege sufficient facts that, when accepted as true, state "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The party opposing the motion to amend bears the burden of proving the claim's futility. *See, e.g., Allison v. Closette Too, L.L.C.*, 14-cv-1618 (LAK) (JCF), 2015 WL 136102, at *2 (S.D.N.Y. Jan. 9, 2015)

The Second Circuit has held that leave to amend may be denied on the basis of futility when it is "beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999) (internal quotation marks and citation omitted). In determining whether an amendment is futile, the court evaluates the amended complaint "through the prism of a Rule 12(b)(6) analysis." *Henneberry v. Sumitomo Corp. of America*, 415 F. Supp. 2d 423, 433 (S.D.N.Y. 2006). Following this standard, the court

accepts the plaintiff's factual allegations as true and draws reasonable inferences in favor of the plaintiff. *Id.*

Generally, courts will not deny leave to amend based on futility unless the proposed amendment is "clearly frivolous or legally insufficient." *See In re Ivan F. Boesky Sec. Litig.*, 882 F. Supp. 1371, 1379 (S.D.N.Y. 1995) (citation omitted). Beyond these considerations, the court does not need to consider the substantive merits of the plaintiff's claim on a motion to amend. *Id.*

### B. Pro Se Plaintiff

Here, the Court notes that Pasha is proceeding *pro se*. "A *pro se* litigant's papers must be construed liberally 'to raise the strongest arguments they suggest.'" *Jules v. Andre Balazs Properties*, No. 20-cv-10500 (LGS), 2023 WL 5935626, at *2 (S.D.N.Y. Sept. 12, 2023) (quoting *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022)). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). At the same time, "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Id.* (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678. A *pro se* complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice. *Id.* (internal quotations omitted) (quoting *Twombly*, 550 U.S. at 557).

### III.    DISCUSSION

Defendants oppose this motion solely on the basis that the following claims are futile: (1) the addition of the DEC as a defendant in this action; (2) Pasha's allegations of discrimination based on his ethnicity and gender pursuant to Title VII and the NYSHRL; and (3) Pasha's § 1981 claims.[7]  Doc. 50 at 6.  The Court addresses each argument in turn.

   1.  *Addition of the DEC as a Defendant*

Pasha seeks to add the DEC as a party in the proposed amended complaint.[8]  *See* Doc. 49.  The Defendants argue that Pasha has not plausibly alleged that the DEC was his employer such that the agency could be held liable pursuant to Title VII, the NYSHRL, or § 1981.  Doc 50 at 9–12.

To hold an employer liable for unlawful employment practices under Title VII or the NYSHRL, an employer-employee relationship must have existed between the parties at the time of the alleged unlawful conduct.  *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 112 (2d Cir. 2000).  The same substantive standards of Title VII also apply under § 1981. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  For the purposes of these statutes, "a decision on whether a worker is an employee …. requires the application of the common law of agency."  *Eisenberg*, 237 F.3d at 111.  The initial requirement under the common law agency

---

[7] In their three-page memorandum of law, ExecuSearch notes that it "adopts and puts forth" the DOH's arguments from their opposition, and raises no additional arguments.  Doc. 52 at 2.  Accordingly, the Court will address the Defendants' arguments together.

[8] When discussing the proposed amended complaint, the Court refers to the version filed by Pasha on January 30, 2024.  Doc. 49.  While this complaint was incorrectly styled as the "second amended complaint," the Court notes that the operative complaint in this action is the original complaint, Doc. 2, not any previously filed version of the proposed amended complaint.  *See Vasquez v. Young Chow Garden, Inc.*, No. 17-cv-5605 (PGG), 2018 WL 11452581, at *1 (S.D.N.Y. Nov. 16, 2018) ("An amended complaint becomes the operative complaint when the plaintiff's motion to amend is granted") (citations omitted).

test of employment is a "threshold showing that [the company] hired and compensated" a plaintiff. *Gilani v. Hewlett-Packard Co.*, 2018 WL 4374002, at *4 n.7 (S.D.N.Y. Sept. 12, 2018) (quoting *Gulino*, 460 F.3d at 379). Here, Pasha has not alleged that the DEC hired or compensated him, and thus he is not an employee of the DEC under the common law agency test.

Pasha instead asserts that the DEC was a joint employer with the DOH.[9] Doc. 64 at 12–14. The joint-employer doctrine holds that "an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." *Gilani*, 2018 WL 4374002, at *5 (citing *Arculeo*, 425 F.3d at 198).

Application of the joint-employer doctrine is particularly useful in situations—like this one—involving "staffing agencies and their client entities." *Gilani*, 2018 WL 4374002, at *5 (citations omitted); *see also Liotard v. FedEx Freight Corp.*, 2016 WL 1071034, at *5 (S.D.N.Y. 2016) (noting that joint employer doctrine is particularly relevant in staffing agency circumstances). Joint employment exists where "two or more entities ... share significant control of the same employee." *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 843 (2d Cir. 2022). Significant control exists where "an entity other than the employee's formal employer has power to pay an employee's salary, hire, fire, or otherwise control the employee's daily employment activities." *Id.* at 844.

---

[9] Pasha also alleges that ExecuSearch was his employer. *See* Doc. 49 ¶ 2 ("On April 12, 2020, ExecuSearch, a staffing agency, hired him as an Administrative Assistant.").

8

In the instant case, the proposed amended complaint does not establish that the DEC exercised the kind of control over Pasha that would be necessary to establish a joint employment relationship. First, it is undisputed that Pasha was hired by ExecuSearch rather than the DEC. It also is clear that the DEC did not have the authority to fire Pasha. In the proposed amended complaint, Pasha argues that McCormick was a DEC employee who had "input" towards his termination, but does not allege that he was fired by McCormick or the DEC.[10] *See* Doc. 49 ¶¶ 32–33. Moreover, courts in this District have found that a third party's influence on a decisionmaker's termination of a plaintiff fails to establish a joint employment relationship. *Fried v. LVI Services., Inc.*, No. 10-cv-9308 (JSR), 2011 WL 2119748, at *6–7 (S.D.N.Y. May 23, 2011) (plaintiff failed to plausibly allege defendant company was joint employer even though plaintiff alleged the company's officers sat on his employer's board of directors, advocated for plaintiff's termination, sent him a termination letter, and were directly involved in transitioning his job responsibilities); *Byron v. Bronx Parent Housing Network*, 1:21-cv-02568 (MKV), 2023 WL 2585824 at *3 (S.D.N.Y. Mar. 20, 2023) (City of New York was not plaintiff's joint employer under Title VII despite her allegations that City supervised plaintiffs on a "minute by minute" basis and recommended individuals to be hired and promoted).

In his reply, Pasha clarifies that that the proposed amended complaint's refence to his work placement with the DOH "alongside" DEC was meant to indicate that the DOH and the DEC had "a joint management arrangement." Doc. 64 at 12. Even considering the purported joint arrangement, Pasha proffers no facts that plausibly suggest that the DEC had control over

---

[10] While Pasha alleges he was "terminated for 'unprofessionalism,'" the proposed amended complaint does not expressly name the entity that fired him. Doc. 49 ¶ 32. However, Pasha alleges that the "decision was made by New York Department of Health Supervisor [Parente]." *Id*. ¶ 33. In his reply, Pasha argues that he was "terminated by the DOH." Doc. 64 at 5. Regardless, Pasha never alleges that the DEC was the firing entity.

his daily activities.[11]  Accordingly, Pasha has not alleged that the DEC shared significant control over him with ExecuSearch or the DOH, and thus joint employer liability is inapplicable.  The Court therefore denies Pasha's request to add the DEC as a defendant.

    2. *Discrimination on the Basis of Ethnicity, Race, and Gender*

Defendants argue that the proposed amended complaint fails to state a plausible claim for discrimination on the basis of ethnicity, race, or gender.  Doc. 50 at 12–15.  Pasha argues that he does sufficiently allege that he was discriminated against based on his ethnicity and race.  Doc. 64 at 14–16.

Under Title VII, employers are prohibited from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  Race includes ethnicity for the purposes of Title VII.  *See Village of Freeport v. Barrella*, 814 F.3d 594, 607 (2d Cir. 2016).  To survive a motion to dismiss, a plaintiff bringing a Title VII employment discrimination claim is required to "assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed."  *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (internal quotation marks and citation omitted).  NYSHRL claims are analyzed under the same standards.  *See Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020) ("Claims under both Title VII and the NYSHRL…are generally treated as 'analytically identical,' and addressed together.") (citation omitted).

---

[11] Ordinarily, the Court does not consider new arguments raised in a reply.  *See Simpson v. City of New York*, 793 F.3d 259, 264 (2d Cir. 2015).  However, in light of Pasha's *pro se* status, the Court will consider this statement because, rather than raising a new argument, it merely clarifies facts already discussed in the proposed amended complaint.  *Licausi v. Griffin*, 460 F. Supp. 3d 242, 260 (E.D.N.Y. 2020) ("Submissions by a *pro se* petitioner are held to less stringent standards than formal pleadings drafted by lawyers.").

A plaintiff alleging a violation of § 1981 must establish that: (1) he is a member of a racial minority group; (2) the defendant intended to discriminate against plaintiff on the basis of race; and (3) the discrimination concerned an activity enumerated in the statute, such as employment. *Johnson v. City of New York*, 669 F. Supp. 2d 444, 449 (S.D.N.Y. 2009). In *St. Francis College v. Al-Khazraji*, the Supreme Court held discrimination based on "ancestry or ethnic characteristics" is "racial discrimination that Congress intended [Section] 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory." 481 U.S. 604, 609–13 (1987). Accordingly, § 1981 prohibits discrimination on the basis of race and ethnicity, but not on the basis of gender, religion, or national origin. *See Village of Freeport*, 814 F.3d at 606–07; *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998).

The Defendants do not oppose Pasha's motion to amend the complaint to add religion or national origin discrimination claims based on the same facts. Thus, it appears the parties disagree over whether being called a member of the Taliban constitutes discrimination based on Pasha's ethnicity. Defendants argue that he does not plausibly allege anyone at his worksite treated him differently due to, or was even aware of, his Punjabi, Kashmiri, and Pashtun background. Doc. 50 at 13. Pasha retorts that the proposed amended complaint expressly alleges that a coworker called him a member of the Taliban.[12] Doc. 64 at 15–16.

Neither party supplies any precedent that is instructive on this issue. However, courts have recognized that race, ethnicity, and national origin claims—like the claims here—may

---

[12] In his reply Pasha also alleges, for the first time, that his coworkers were aware of his ethnicity because he would often translate in Hindi, Punjabi, and Urdu at his worksite and that he listed his fluency in these languages on his resume while applying to his position. Doc. 64 at 15. Unlike Pasha's previous clarification, these factual allegations are not raised in the complaint or in the proposed amended complaint in any form. Accordingly, the Court will not consider them in its analysis. *See Soules v. Connecticut, Dep't of Emergency Services. & Public Protection*, 882 F.3d 52, 56 (2d Cir. 2018) ("[A] party is not entitled to amend its complaint through statements made in motion papers.") (citations omitted).

11

significantly overlap. *See Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) ("Courts have also recognized that race and national origin discrimination claims may substantially overlap or even be indistinguishable depending on the specific facts of a case."). This is especially true in the Title VII context. *See, e.g.*, *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973) (holding, in the Title VII context, "[t]he term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came").

Here, the Court finds that Pasha plausibly asserts that his Punjabi, Pashtun, and Kashmiri ethnicity is connected with being called a member of a terrorist group, such that his claim does not appear "clearly frivolous or legally insufficient." *See In re Ivan F*, 882 F. Supp. at 1379. Accordingly, the Court will grant Pasha's motion to amend the complaint to add allegations of discrimination based on his ethnicity.

Defendants argue that Pasha's § 1981 claims are futile because he does not allege discrimination based on his ethnicity or his Asian race. Doc. 50 at 14. Pasha responds that he does plausibly allege he was discriminated against by being called a member of the Taliban. Doc. 64 at 15–16.

While the proposed amended complaint lists Pasha's race as Asian, *see* Doc. 49 ¶ 36, Pasha's arguments in support of his motion to amend center around his alleged mistreatment as someone of South Asian descent. Doc. 64 at 10 ("Plaintiff … [alleges] plausible discrimination based on his Punjabi[13] ethnicity as a form of racial discrimination."). Neither party references, nor is the Court aware of, any caselaw establishing whether being called a terrorist is a form of racial discrimination against Asians or South Asians. However, as described above, the Court finds that Pasha plausibly asserts that his Punjabi heritage is connected with being called a

---

[13] Pasha does not reference his Kashmiri or Pashtun ethnicity in this argument.

12

member of a terrorist group. Accordingly, Pasha does allege discrimination based on his ethnic characteristics, which § 1981 is intended to prohibit. *See Saint Francis College*, 481 U.S. at 613. Therefore, Pasha's § 1981 claims do not appear to be "clearly frivolous or legally insufficient." *In re Ivan F*, 882 F. Supp. at 1379. Accordingly, the Court grants his motion to amend the complaint to add the proposed § 1981 claims.

Finally, aside from noting that Pasha is a man, Doc. 49 ¶ 1, there are no factual allegations specifically relating to gender in Pasha's proposed amended complaint. Moreover, Pasha does not respond to the Defendants' argument that his gender discrimination claims are futile. Accordingly, the Court deems this claim abandoned and denies Pasha's request to amend the complaint to add claims of gender discrimination. *See Vega v. Dep't of Educ.*, No. 19-cv-6963 (ER), 2020 WL 6727803, at *7 (S.D.N.Y. Nov. 16, 2020) ("Vega has failed to refute DOE's arguments regarding leave to amend. Therefore, Vega is assumed to have abandoned her leave to amend claim.").

## IV.   CONCLUSION

For the reasons stated above, the Court GRANTS in part and DENIES in part Pasha's motion to amend. Specifically, the Court denies his request to add the DEC as a defendant and to allege discrimination claims based on his gender. The remainder of Pasha's motion is granted. Pasha is directed to file an amended complaint by October 21, 2024. The Defendants' answer or response to the amended complaint will be due by November 12, 2024.

In addition, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal of this Order would not be taken in good faith and therefore denies *in forma pauperis* status for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: September 19, 2024
       New York, New York

_____
EDGARDO RAMOS, U.S.D.J.