**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

# MEMO ENDORSED
at page 22

| | |
|---|---|
| **Talha S. Pasha** | **OBJECTION** |
| | **ORDER 120** |
| -against- | **& MOTION FOR** |
| | **RECONSIDERATION** |
| New York State Department of Health, | |
| New York State Department of Environmental Conservation | Case No. 22 CV 3355 |
| and The Tandym Group f/k/a ExecuSearch Group; | Jury Trial: Yes |

## OBJECTION ORDER 120

### I.   OBJECTION ORDER 120

Plaintiff **OBJECTS** to Order 120 denying New York State Department of Environmental Conservation ("NYSDEC") as defendant. The Amended Complaint [AC Doc. 49] should be sufficient to establish NYSDEC exert joint control alongside NYSDOH over Plaintiff's employment to be considered a joint employer. The Court fails to consider the context of facts in AC Doc. 49 and relies on a standard of review inconsistent with the controlling precedent.

Order 120 claims "the proposed amended complaint does not establish that the DEC exercised the kind of control over Pasha that would be necessary to establish a joint employment relationship." In support, Order 120 claims "courts in this District have found that a third party's influence on a decision-maker's termination of a plaintiff fails to establish a joint employment relationship," citing caselaw that is fundamentally misrepresented. Precedent cases, including the two cited cases, consider this factor among others in determining whether a joint employer relationship exists. In it's analysis of AC Doc. 49 the Court fails to consider the full context of the employment arrangement, as NYSDEC did exert joint control over Plaintiff's employment. Plaintiff **OBJECTS** to Order 120 and preserves the following arguments for appeal.

## II. Legal Standard

### A. Joint Employer Relationship

The legal standard of review for determining a joint employer relationship in the Second Circuit relies on "non-exhaustive factors drawn from the common law of agency, including control over an employee's hiring, firing, training, promotion, discipline, supervision, and handling of records, insurance, and payroll, are relevant to this inquiry." *Felder v. United States Tennis Ass'n*, 27 F.4th 834 (2d Cir. 2022). "The crux of these factors is 'the element of control. [quoting *Gulino v. N.Y. State Educ. Dept*, 460 F.3d 361 (2d Cir. 2006)]; *see also Peppers v. Cobb Cnty.*, 835 F.3d 1289, 1297 (11th Cir. 2016) (considering '(1) how much control the alleged employer exerted on the employee, and (2) whether the alleged employer had the power to hire, fire, or modify the terms and conditions of the employee's employment')." *Id.*

This Circuit finds for a "*joint* employer relationship when two or more entities, according to common law principles, share significant control of the same employee." *Id.* "This means that an entity other than the employee's formal employer has power to pay an employee's salary, hire, fire, or otherwise control the employee's daily employment activities, such that we may properly conclude that a constructive employer-employee relationship exists. Because the exercise of control is the guiding indicator, factors indicating a joint-employment relationship may vary depending on the case, and any 'relevant factor[ ] may ... be considered.' We are thus mindful that 'all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" *Id*. Joint employment is "sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities," *Green v. Jacob & Co. Watches, Inc*., 248 F. Supp. 3d 458, (S.D.N.Y. 2017).[Citations omitted].

**III. Objections to Order 120: Arguments to Be Preserved for Appeals**

**A. Background**

In denying Plaintiff's request to add NYSDEC as a defendant, Order 120 fails to consider the full context of the employment arrangement and facts giving rise to the current action. The Court makes involvement of a NYSDEC supervisor in Plaintiff's termination as the decisive factor while making this determination. In support of this conclusion, the application of caselaw to joint employer claims is fundamentally flawed. Order 120 equates the holdings in *Fried v. LVI Services, Inc.* and *Byron v. Bronx Parent Housing Network* to this case by claiming "a third party's influence on a decisionmaker's termination of a plaintiff fails to establish a joint employment relationship." However, facts and holding of *Byron* and *Fried* are not analogous to the current action and are misrepresented in Order 120 to support this erroneous conclusion.

The cited facts pertain to single employer claims rather than joint employer claims. Order 120 erroneously interprets the facts from *Fried* and *Byron* for single employer claims through the lens of the joint employer standard of review. Also, neither case alleges a third party influenced the termination of the plaintiffs' employment. Even with third-parties, facts indicating "commonality" or "involvement" in termination decisions are relevant in determining whether a joint employment relationship exists. *Lima v. Addeco*, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009).

This undermines Order 120's conclusion regarding Plaintiff's joint employer claims. The fundamental difference between claims asserted in *Fried* and *Byron* and claims by Plaintiff in this case is how control is exercised. The facts of the two cited cases allege control is exercised by one entity making decisions through another as a single employer in a traditional workplace. In the facts of this case, Plaintiff is assigned by a staffing agency to a federally funded testing site

where two separate state agencies are working alongside each other in joint management, sharing commonality in supervision, pay, records, and firing related to Plaintiff's employment. Therefore, a third-party's influence on a decisionmaker's termination of Plaintiff plausibly establishes joint employer claims when the third-party is a joint decisionmaker.

"[F]actors indicating a joint-employment relationship may vary depending on the case." *Felder*, 27 f.4th at 844. In this case there is a third-party government agency that exercised significant control over Plaintiff's employment, their involvement in terminating the Plaintiff was just one factor that substantiated plausible joint control over Plaintiff's employment. Order 120 fails to assess "all of the incidents of the relationship" in AC Doc. 49, including supervision, pay, and records that indicate "control over [Plaintiff's] daily activities" as "no one factor [is] decisive." *Id*. Plaintiff **OBJECTS** and preserves the following arguments for appeal of Order 120 on the grounds of plain error, fundamental error, and misapplication of the law.

### B. Misrepresentations in Citing *Fried v. LVI Services, Inc.*

In *Fried v. LVI Services, Inc.*, the Court evaluated the plaintiff's joint employer claims by examining the role of Apollo and CHS ["defendant companies"] and their company officers ["third-parties"] on the Board of LVI Services, Inc. ["employer"]. The plaintiff asserts joint employer claims by alleging "'Apollo [and CHS], through [their] seats on the Board, along with LVI, jointly controlled the terms and conditions of Mr. Fried's employment with the Company.'" *Id*. at *7. The Court ruled against joint employer claims because:

> "plaintiff pleads no facts demonstrating that there was a 'commonality of hiring, firing, discipline, pay, insurance, records, and supervision' between LVI on the one hand and Apollo/CHS on the other. Nor are there any well-pled allegations in the Amended Complaint establishing that Apollo and CHS knew or should have known about the alleged discrimination." *Fried v. LVI Services, Inc.* at *7.

In contrast, Order 120 cites denial was due to facts that aren't even relevant to such an inquiry:

> "plaintiff failed to plausibly allege defendant company was joint employer even though plaintiff alleged the company's officers sat on his employer's board of directors, advocated for plaintiff's termination, sent him a termination letter, and were directly involved in transitioning his job responsibilities."

These facts cited by Order 120 were alleged to substantiate a single employer relationship, as they describe how company officers acted "through" their seats on the Board of the employer, purportedly "operating as a single, integrated enterprise" with their respective defendant companies. *Id.* at *5. These facts sought to establish the employer and defendant companies "'have an interrelation of operations, centralized control over labor relations, common management and common ownership'; and 'Defendants Apollo and CHS, through their status as controlling shareholders of Parent, controlled the day-to-day operations of the LVI Defendants and the terms and conditions of Plaintiff's employment.'" *Id.* at *5.

The cited facts in Order 120 are irrelevant to plaintiff's joint employer claims, as they have no bearing on "commonality of hiring, firing, discipline, pay, insurance, records, and supervision" between employer and defendant companies. In *Fried*, the Court concluded that defendant companies lacked joint control over the employment conditions of the plaintiff because facts alleged control was exercised exclusively through company officers' roles on the Board, indicating a single employer context. "Reduced to its essence, plaintiff's theory in this case is that Apollo and CHS exercised control over plaintiff's employment through the actions of the representative directors that Apollo and CHS appointed to the Board of LVI Parent." *Id*. Order 120 incorrectly cites facts as being applied to joint employer claims. The cited facts are relevant, intrinsically, only to single employer claims confined to corporate contexts. *Id.*

Order 120 relies on this misrepresentation in concluding "a third party's influence on a decisionmaker's termination of a plaintiff fails to establish a joint employment relationship." Company directors weren't a "third-party" in this equation, they were the decisionmakers acting on behalf of the employer as members of the Board:

> "In other words, when the representative directors took the alleged actions complained of in the Amended Complaint, they were acting in their capacities as board members of LVI Parent, not as employees or agents of Apollo/CHS." *Id*.

The fundamental difference between these claims asserted by *Fried* and joint employer claims is how control is exercised. The above referenced facts allege control is exercised through officers' roles on the Board as a single entity. Joint employment claims failed because facts didn't allege any commonalities indicating joint control between defendant companies and employer as separate entities, nor were there any facts suggesting that the defendant companies had knowledge of the discrimination. *Id.* at *7. This means there was no "third-party" involvement alleged or "influence on a decisionmaker's termination of the plaintiff" to support a determination that such a factor "fails to establish a joint employer relationship."

Even if plaintiff were to allege facts stating defendant companies were acting jointly with the employer, he would have to allege they "are separate legal entities, but that they handle certain aspect of their employer-employee relationships jointly." *Arculeo v. On–Site Sales and Marketing, LLC*, 425 F.3d 193, 198 (2d Cir. 2005). In *Fried* plaintiff states no facts indicating any aspects of the employer relationship were handled jointly. His facts assert defendant companies were acting through their seats on the Board of the employer, and this by legal definition, is not applicable in a joint employer context. Company officers in an individual capacity can't legally be third-party to joint employer claims as individuals are precluded

statutorily. *Id*. There was no third-party involvement in the termination as alleged in *Fried*.

Contrary to Order 120, courts in this District analyze for this factor with joint employer claims.

> "Here, courts look at 'commonality of…firing,' to determine whether an entity is a joint employer. (key inquiry is whether entity 'control[s] some aspect' of employee's work). Lima does not dispute that Adecco played no role in the decision…to terminate Lima's employment." *Lima v. Addeco*, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009).

In Plaintiff's current action, control is exercised jointly between two separate entities, NYSDOH

and NYSDEC, working alongside sharing commonality of decisionmaking, including

supervision and decision to terminate, as alleged in the proposed Amended Complaint.

Order 120 misrepresents facts from *Fried v. LVI Services, Inc.* to draw misleading parallels to

the current action when claiming: "plaintiff failed to plausibly allege defendant company was

joint employer even though plaintiff alleged the company's officers sat on his employer's board

of directors, [1] advocated for plaintiff's termination, [2] sent him a termination letter, [3] and

were directly involved in transitioning his job responsibilities." Purported to be relevant to a joint

employer inquiry, these claims are based on the following facts from plaintiff's pleadings:

> "During this meeting [discussing plaintiff's employment status], the Board members from Apollo and CHS 'were especially vocal about the right of the Board to eliminate all of Plaintiff's responsibilities as Chairman.'" *Id.* at *3.

> "On November 16, 2010, Simmons, on behalf of the Board, notified plaintiff in a written letter that his employment with LVI would terminate effective November 30, 2010."

> "Simmons [CHS managing partner] indicated that State [Apollo President and CEO] and the members of the Board [of employer LVI] wanted to terminate plaintiff's Employment Contract and transition his job duties to LVI managers;"

These facts allege company officers of defendant companies were taking actions ***through*** their

seats on the Board on behalf of the employer as a single entity, not ***jointly*** as separate entities.

[1] "*Board members from Apollo and CHS* 'were especially vocal about the right of *the Board* to

eliminate all of Plaintiff's responsibilities as Chairman.'"; [2] "Simmons, *on behalf of the Board*, notified plaintiff in a written letter that his employment with LVI would terminate"] [3] "*members of the Board* wanted to terminate plaintiff's Employment Contract and transition his job duties to LVI manager." The plaintiff alleges control by defendant companies was exercised through officers' roles on the Board as a single entity, not jointly as separate entities.

In *Fried v. LVI Services, Inc.*, single employer claims failed because company officers were decisionmakers for the Board on behalf of the employer, not acting at the behest of defendant companies. Even if there were facts suggesting defendant companies were aware of these actions, subsidiaries as minority shareholders are precluded as a matter of law from exercising control needed, as they are by definition a "minority." *Id*. Facts failed to allege any control exercised jointly by employer and defendant companies as separate entities. None of the cited facts in Order 120 are relevant to joint employer claims as erroneously claimed.

Contrary to the conclusion drawn in Order 120, there was no third-party involvement in either single employer or joint employer claims, which undermines the basis for the Court's conclusions. No facts alleged company officers or defendant companies were acting ***jointly*** with employer. There was no "third-party" involvement in single employer claims, let alone joint employer claims as misrepresented in Order 120. The only claims in *Fried* pertaining to "third-party" involvement isn't for joint employer claims but "'Tortious Interference with Employment and/or Contractual Relations.'" *Id*. These claims were dismissed because "'alleged violations of federal, state, and city anti-discrimination laws are not torts under New York law…it is 'a new statutory cause of action which was not cognizable at common law.'" *Id.* at *9.

This undermines the conclusion claiming "courts in this District have found that a third

party's influence on a decisionmaker's termination of a plaintiff fails to establish a joint employment relationship." The facts cited in Order 120 to support this conclusion are fundamentally misrepresented. Contrary to the holding in Order 120, courts in this District have established facts alleging commonality in termination decisions, among other factors, are relevant in determining whether a joint employment relationship exists. "[T]he exercise of control is the guiding indicator, factors indicating a joint-employment relationship may vary depending on the case, and any 'relevant factor[ ] may ... be considered so long as [it is] drawn from the common law of agency…with no one factor being decisive." *Felder*, 27 f.4th at 843.

The current action diverges significantly from *Fried*. Here, Tandym, as a staffing agency, placed Plaintiff at a federally funded testing site. The severity of the pandemic necessitated NYSDOH and NYSDEC to establish a joint employment arrangement in staffing for support. Both state agencies acting jointly, exert control over the plaintiff's employment. The federal funding and common goal of testing establishes a joint employment arrangement, as funding reimbursed for wages and testing requires sharing of records to ensure accuracy and compliance.

Unlike the corporate context in *Fried*, both NYSDOH and NYSDEC jointly managed aspects of the plaintiff's employment, including task assignment and supervision. Working alongside as separate entities with the common goal of administrating COVID-19 testing, their joint decision-making processes demonstrates "commonality" of control that supports a joint employer claim. This includes the decision to "rearrange schedules" to supervise Plaintiff and benefit from his labor towards their respective objectives at separate work sites, and their involvement in the decision to terminate him. While the decision was asserted by NYSDOH, NYSDEC's involvement does not preclude liability as they were joint employers in this context. *Id.*

## C. Misrepresentations Cited in *Byron v. Bronx Parent Housing Network*

The Court also makes a fundamental error in misrepresenting the facts and holding of *Byron v. Bronx Parent Housing Network* claiming "a third party's influence on a decisionmaker's termination of a plaintiff fails to establish a joint employment relationship." There's only two-parties involved in joint employer claims for the purposes of this action, as no staffing agencies are involved. While citing *Byron* the Court adopts the State's misrepresentations from Memo Doc. 50 [p. 6 ¶ 2], "City of New York was not plaintiff's joint employer under Title VII despite her allegations that City…recommended individuals to be hired and promoted." The City is the second party to the joint employer claims, there is no third-party. Regardless, no facts state the "City recommended individuals to be hired and promoted," this is a fabrication. Also, contrary to Order 120, the holding found no joint employer relationship because these facts were absent.

The closest statement to these claims in the Amended Complaint supports a theory of a "single employer relationship." The *Byron* Court summarizes the facts accordingly:

> "The Amended Complaint does not allege intelligible facts sufficient to find a single employer relationship. For illustration, under a section titled 'Interrelation of operations,' the Amended Complaint states: 'the minute, hourly, daily, applications, referrals, personnel decisions, vouchers, computers, chain of command was shared between the Def. BPHN, and Def. NYC.' Am. Compl. ¶ 27." *Id*. at *3

In *Byron*, the plaintiff never claims the "City recommended individuals to be hired and promoted." Instead, Byron references "referrals, personnel decisions, recommendations, promotions, job applications, etc.." however, no such allegations could be inferred from this recitation of elements of the single employer standard. Specifically for "recommendations" or "personnel decisions," it is an unwarranted inference to claim this is specifically for "recommending individuals to be hired." Even broadly interpreted, it doesn't establish "hiring

recommendations" in a joint employer context. Rather, these facts indicate a shared computer system for evaluating labor relations and point towards a single employer framework. *Id.* at *2. These facts have no relevance to "joint employer" claims as Order 120 misrepresents.

The facts plaintiff provides to support "joint employer" claims are less substantial in determining if the City "recommended individuals to be hired and promoted." See *Id*. at *3-*4:

> "In support of this theory, the Amended Complaint alleges, among other things, that: (1) Byron's ID badge referenced both BPHN and the City, Am. Compl. ¶ 3–4; (2) BPHN's website states it was 'Partners with the City of New York,' Am. Compl. ¶ 5; (3) the City exerted 'minute by minute, hour by hour, day by day, strict scrutiny and supervision of each and every aspect of work functions,' Am. Compl.  6; (4) the City and BPHN shared a computer system, Am. Compl. ¶ 7; (5) the City 'monitored' BPHN employees, Am. Compl. ¶ 9; and (6) a city employee 'supervised Plaintiff,' Am. Compl. ¶ 17."

Even interpreting "every aspect of work functions" broadly, it is an unwarranted inference this is "making hiring recommendations." Nowhere in the pleadings or holding of *Byron* are there cognizable allegations claiming the "City recommended individuals to be hired" as a joint employer. Also, these vague references lack a direct connection to plaintiff's employment, as the holding clarifies: "Indeed, Byron does not even 'allege facts showing that the [City was] involved in the decision[ ] of whether to hire or fire' her." Id. at *1. This holding counters claims that "courts in this District have found that a third party's influence on a decisionmaker's termination of a plaintiff fails to establish a joint employment relationship." Instead, Courts in this district look for such factors of control to establish a joint employer relationship.

Order 120 fabricates the facts contained in *Byron v. Bronx Parent Housing Network* when it states "City of New York was not plaintiff's joint employer under Title VII despite her allegations that City recommended individuals to be hired and promoted." It was not "despite" her allegations the City of New York was not plaintiff's joint employer under Title VII but

precisely because allegations that City "recommended individuals to be hired and promoted" were ***absent***. Byron fails to articulate cognizable facts pertaining to the City's role in employment decisions, specifically hers, and this undermines her claims. This is not the case in the instant action, as Plaintiff alleges direct supervision and involvement in termination decision.

Similar to the misrepresentations made when citing *Fried* in Order 120, in *Byron* the City wasn't alleged to being a "third-party" that had "influence on a decisionmaker's termination of a plaintiff." Instead plaintiff [Byron] sought to establish the City as the "second party" in single employer claims alleging the City made employment decisions through the "first party" BHPN. The facts relied on by Order 120 were alleged to support this theory, and had no relevance to the joint employer analysis. There weren't any facts alleged to claim involvement in "hiring," "promotions," or "termination" decisions, constituting a fundamental misrepresentation.

This is different from the instant action, where there is a staffing agency and two government agencies that supervised Plaintiff and were directly involved in the decision to terminate his employment. The only similarity in *Byron* and this case is they both involve government entities.

## IV. Plaintiff's Joint Employer Claims

The Court denies Plaintiff's request to add defendant NYSDEC, asserting Plaintiff's facts fail to allege a joint employer relationship. In reaching this conclusion the Court claims "courts in this District have found that a third party's influence on a decisionmaker's termination of a plaintiff fails to establish a joint employment relationship." The facts of the cases cited in support of this assertion were misrepresented, failing to support this determination. To the contrary, holdings of these cited cases demonstrate Courts in this district consider this a substantial factor in establishing a plausible joint employer relationship, however "no one factor is decisive."

Plaintiff is a *pro se* litigant and needs to only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f). "Courts must construe *pro se* pleadings broadly, and interpret them 'to raise the strongest arguments that they suggest.'" *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir. 2000). A complaint doesn't "suffice it tenders naked assertion devoid of further enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Therein the Court required facts "pointing toward a meeting of the minds," otherwise "conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Also, "It must only be plausible and not merely speculative, that..alleged joint employer, exerted significant control over the terms and conditions of [Plaintiff's] employment. *Fender*, 27 f.4th at 845.

The facts in the Amended Complaint sufficiently supports plausible joint employer claims. In assessing joint employer claims, "common-law element of control is the principal guidepost," *Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440 (2003). An "employer" for the purposes of Title VII is circularly defined in this statute, thereby defaulting to the common law definition. *Id.* ["courts will look to the common law to fill gaps in statutory text"]. In defining employer and determining liability under Title VII, this Circuit applies "a set of non-exhaustive factors…when present, may indicate the the existence of an employer-employee relationship under the common law." *Felder*, 27 f.4th at 843. Relevant factors underlying the facts in the proposed Amended Complaint Doc. 49 are not considered or reviewed in Order 120.

Order 120 fails to consider the full context of Plaintiff's case as alleged in AC Doc. 49. Plaintiff was hired by Tandym, a staffing agency, and assigned to a federally funded testing site during a COVID-19 pandemic where two (2) state agencies, NYSDOH and NYSDEC, working alongside each other jointly managed the operations [AC Doc. 49, ¶ 4]. Given the proliferation of the COVID-19 virus and emergency response that was well documented and experienced, this fact establishes the emergency nature of this testing site as common knowledge and not the typical office setting. The emergency nature of the response necessitated joint management arrangement between state agencies to facilitate operations of the testing site, including while staffing for support. The need for personnel, which was in short supply given the government mandated lockdowns and severity of the virus, led to Plaintiff's assignment through a staffing agency at the Stony Brook testing site. *Id.*

There are various factors that establish commonality of factors given the agencies jointly managed the site. It is common knowledge and widely reported the testing sites were federally funded and this establishes commonality of pay. Moreover, being a jointly managed state site specifically for the administration of a test requires commonality of records. The joint management arrangement also gives rise to commonality of staffing including hiring, supervision, and firing decisions. This applied directly to Plaintiff's assignment at the test site. Plaintiff was initially assigned to the NYSDOH work site. *Id.* NYSDOH rearranged schedules and relinquished control over Plaintiff by assigning him to NYSDEC with Bob McCormick as supervisor, [AC ¶ 27 "assigned as Supervisor at the work site where Plaintiff was assigned."]. Working alongside as separate entities with the common goal of administrating COVID-19 testing, the NYSDOH and NYSDEC exert commonality of control and joint decision-making

processes as outlined in the Amended Complaint [Doc. 49], particularly as it pertains to Plaintiff's employment. A third-party's influence on a decisionmaker's termination of a Plaintiff establishes joint employer claims when considering the third-party was a joint decisionmaker.

There are facts alleged in the Amended Complaint [Doc. 49] the Court overlooks in it's assessing joint employer claims. A major factor that Order 120 fails to discuss is the commonality of supervision shared over Plaintiff's employment by NYSDOH and NYSDEC.

> "A joint employer relationship may be found to exist where there is sufficient evidence that the respondent had immediate control over the other company's employees. Relevant factors include commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *N.L.R.B. v. Solid Waste Servs., Inc.*, 38 F.3d 93 (2d Cir. 1994).

Plaintiff was hired as support staff initially assigned to the NYSDOH work site [¶ 4], where the daily activities were related to the goals of NYSDOH. When faced with discrimination and a hostile work environment [¶ 22], Plaintiff was reassigned by NYSDOH supervisor Brian Parente to a different physical work site. Plaintiff was placed at the NYSDEC work site under the supervision of a different individual, NYSDEC supervisor Bob McCormick, where the daily activities were related to the goals of NYSDEC [¶ 27, "assigned as Supervisor at the work site where Plaintiff was assigned."]. FRCP requires *pro se* Plaintiff's pleadings to be "interpreted to raise the strongest arguments that they suggest," and Bob McCormick did in fact directly supervise Plaintiff in the course of his employment at the testing site. Direct supervision is precisely what Plaintiff suggests, and was in fact the relationship that exist. This factor was overlooked in Order 120. "All pleadings shall be so construed as to do substantial justice.'"

Unlike an office, control is indicated by location of the work site where Plaintiff is assigned. While at the NYSDOH work site, the manner and means of daily activity pertains the NYSDOH

work goals. While under the supervision of NYSDEC at their work site, Plaintiff's manner and means of daily activities was controlled by NYSDEC and related to their work goals. Plaintiff establishes as a matter of fact he was assigned to a work site where NYSDEC Bob McCormick supervised his daily activities, given the joint management arrangement with the NYSDOH and the commonality of shared resources that facilitated the reassignment of Plaintiff to NYSDEC.

Other than the change in work sites and subsequent change in supervision and daily activities, NYSDEC did have direct involvement in Plaintiff's termination. Contrary to the conclusion in Order 120, courts in this District have analyzed for this factor as an indication of a joint employer relationship. In fact, courts in this District have found joint employment is "sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities," *Green v. Jacob & Co. Watches, Inc*., 248 F. Supp. 3d 458, (S.D.N.Y. 2017) quoting *Laurin v. Pokoik*, 02 Civ.1938 (LMM), 2004 WL 513999, at *8 (S.D.N.Y. Mar. 15, 2004). Meaning, even as a third-party NYSDEC should be held liable as a joint employer as "input" towards Plaintiff's termination "significantly affects access to employment opportunities." [Other cases where termination is a factor in determining joint employment relationship in this District include: *Shiflett v. Scores Holding Co.,* 601 F. App'x 28 (2d Cir. 2015) "As the district court explained, [the plaintiff] does not allege that she was hired, fired, or managed by an employee of [the alleged joint employer]." *Green v. Jacob & Co. Watches, Inc*., 248 F. Supp. 3d 458, (S.D.N.Y. 2017) "noting that the plaintiff alleged that the purported joint employers 'had the power to discipline [the plaintiff] and threaten him with termination.'")].

Therefore, NYSDEC did exercise significant control over the terms of Plaintiff's employment, jointly with NYSDOH. *Felder*, 27 f.4th at 843. Additional facts substantiating

significant control exercised by the NYSDEC can be provided but requests have been denied. The Amended Complaint clearly states it was a facility for the administration of the COVID-19 test. As the holding of *Felder* has established, "all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *Felder*, 27 f.4th at 844. The Court aims to make one factor decisive in this inquiry of joint employer claims, and the conclusion relying on this determination has been contradicted by various holdings in this District. Particularly, *Green v. Jacob & Co. Watches, Inc.*, 248 F. Supp. 3d 458, (S.D.N.Y. 2017), where the mere threat of termination established plausible joint employer claims. [Joint employment relationships is "sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities."] The law doesn't preclude two state agencies from liability, as "joint employer relationship [is] *when two or more entities*, according to common law principles, share significant control of the same employee."

The Court erred in denying Plaintiff's claims from proceeding against defendant NYSDEC. Order 120 draws a flawed conclusion by relying on misrepresentations of caselaw, failing to consider the full contexts of the facts as memorialized in the proposed Amended Complaint Doc. 49, and misapplying the binding authority in the Second Circuit governing these issues. In doing so, the Court creates an avenue to circumvent liability of actionable discriminatory conduct. Facts in the Amended Complaint Doc. 49 have established plausible facts and NYSDEC should be held liable for their discriminatory conduct. In adopting the State's arguments, Order 120 overlooks substantial factors relevant to the inquiry of joint employer claims against NYSDEC. Thus, the mischaracterization in Order 120 not only undermines the specific case at hand but also sets a concerning precedent for the interpretation of joint employer claims. Plaintiff **OBJECTS**.

## MOTION FOR RECONSIDERATION

As this Court has previously articulated in Order 92, [Doc. 92 filed on 6/7/24]:

> "In requesting a Motion for Consideration, the moving party must 'present controlling decisions or facts that the court originally overlooked' that 'might reasonably be expected to alter the [Court's] conclusion' be- cause 'a mere disagreement with the Court's legal determination is not a valid basis for reconsid- eration.'" *(citations omitted)*."

**OBJECTION** Order 120 details several facts and controlling decisions the Court has overlooked. Pending any decisions that fail to address the following issues presented for reconsideration, Plaintiff will appeal for plain error, fundamental error, and misapplication of the law in the decision to deny adding NYSDEC as a defendant to this action. *Washington Square Post No. 1212 v. Maduro*, 907 F.2d 1288, 1292 n. 1 (2d Cir.1990). Plaintiff will await judgment on this Motion for Reconsideration prior to taking this action, despite the Court's leveraging the Plaintiff's economic status as a means of short changing his access to the appeals process. By awaiting judgment on this Motion, Plaintiff preserves right to filing an appeal of Order 120.

> "It is far more efficient and consistent with the just, speedy, and inexpensive determination of every action to extend the time for noticing an appeal until after the motion for reconsideration is decided and for the court of appeals then to consider both the underlying judgment and the order on the motion. *Rouviere v. DePuy Orthopaedics, Inc.*, 560 F. Supp. 3d 774, 787 (S.D.N.Y. 2021).

Order 120 fails to cite the legal standard of review the Court applied towards Plaintiff's joint employer claims against NYSDEC in the section titled "**II. Legal Standard.**" Instead the Court selectively references factors in denying claims and lacks a comprehensive assessment of facts. There is a perfunctory mention of legal standard applicable to the joint employer claims brought by Plaintiff, however the Court never goes into detail regarding the various factors relevant to a joint employer inquiry. Instead the Court claims "the proposed amended complaint does not

establish that the DEC exercised the kind of control over Pasha that would be necessary to establish a joint employment relationship." The Court also fails to cite the legal standard of review and actually conduct a review of Plaintiff's retaliation claims as it pertains to NYSDEC as a joint employer. Title VII, NYSHRL, and § 1981 retaliation claims are analyzed pursuant to Title VII principles. *Green v. Jacob & Co. Watches, Inc.,* 248 F. Supp. 3d 458, (S.D.N.Y. 2017).

This unprecedented holding is contradicted by precedent cases, as detailed in the Objection Order 120. [Joint employment is "sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities," *Id.* quoting *Laurin v. Pokoik*, 02 Civ.1938 (LMM), 2004 WL 513999, at *8 (S.D.N.Y. Mar. 15, 2004)]. The Court fails to discuss facts mentioned in the proposed Amended Complaint that support joint employer claims and why these facts weren't relevant to this inquiry. Instead citing misrepresented caselaw in support of a flawed conclusion. The Court also fails to consider retaliation claims under relevant statutes.

In the **OBJECTION** Order 120, Plaintiff articulated the binding legal standard of review applicable to this case, and it is accepted the "principle guidepost is control." This refrain is found in numerous federal holdings because the circular definition of "employer" supplied in the statute of Title VII defers to the common law definition. It is also accepted Plaintiff is a *pro se* litigant, therefore the Court "construe[s] his submissions 'liberally and interpret [ ] [them] to raise the strongest arguments that they suggest." *Id.* [citations omitted]. Pursuant to Federal Rules of Civil Procedure, a plaintiff needs to only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice". Fed.R.Civ.P. 8(f). The holding of Order 120 fails to uphold these rules in denying Plaintiff's request to add NYSDEC as a defendant.

As **OBJECTION** Order 120 details, the conclusion "courts in this District have found that a third party's influence on a decisionmaker's termination of a plaintiff fails to establish a joint employment relationship" is baseless and without merit. The case law supporting this conclusion is initially presented in State Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Leave to File an Amended Complaint, [Memo Doc. 50 filed on 2/5/24], and is misrepresented to support this finding. A closer inspection of the holding of these cases contradicts this conclusion, as courts in this District have found that involvement in the termination decision of a plaintiff is a factor that is considered in establishing significant control in a joint employer context. ["Indeed, Byron does not even 'allege facts showing that the [City was] involved in the decision[ ] of whether to hire or fire' her." *Byron v. Bronx Parent Housing Network*. Also, "facts demonstrating that there was a 'commonality of hiring, firing, discipline, pay, insurance, records, and supervision'" *Fried v. LVI Services, Inc*.] The factor of NYSDEC being a third-party is irrelevant, as claims can include "any party who significantly affects access of any individual to employment opportunities." *Green v. Jacob & Co. Watches, Inc.*

NYSDEC was clearly stated to have involvement into Plaintiff's termination in the proposed Amended Complaint ¶ 33, in stark contrast to the facts alleged in the holding of the other two cases, *Byron* and *Fried*. Regardless the facts cited in Order 120 were alleged to support single employer claims. By misrepresenting cited facts, Order 120 supports a flawed conclusion that is contradicted by the same holdings it cites in support. Instead this fact should be considered in support of joint employer claims as it indicates significant control exerted over the terms of Plaintiff's employment. *See Felder*, 27 f.4th at 843. Other facts were alleged in the proposed Amended Complaint that were overlooked by the Court in Order 120.

The most glaring fact omitted from Order 120 is supervision over Plaintiff's daily activities by NYSDEC, AC Doc. 49 ¶ 27-29. Plaintiff is *pro se* and established legal guidance requires interpreting facts presented in AC Doc. 49 to be construed "liberally and interpret [ ] [them] to raise the strongest arguments that they suggest." *Id*. [citations omitted]. Also, under modern rules of pleading, "[a]ll pleadings shall be so construed as to do substantial justice." In AC Doc. 49 at ¶ 27 "an employee of the New York State Department of Environmental Conservation, Bob McCormick, assigned as Supervisor at the work site where Plaintiff was assigned." This delineates a supervisory relationship existing between Plaintiff and NYSDEC at the same work site. Plaintiff referred to individuals in the proposed Amended Complaint accordingly, as supervisors and co-workers. This is plausible and not merely speculative given the nature of the testing site and the collaborative nature of the relationship between NYSDOH and NYSDEC in administering the COVID-19 testing protocols. NYSDEC did accept Plaintiff's assignment to their work site and did supervise Plaintiff on a consistent basis over an extended period of time.

Order 120 fails to consider the significance of supervision as an element of control at common law. It is a factor widely considered in joint employer inquiries as established in various Supreme Court holdings, and more notably the binding precedent in the Second Circuit, *Felder*, 27 f.4th at 843. Supervisory relationship between Plaintiff and NYSDEC was notably present in several facts. The Court fails to recognize that the joint management arrangement between NYSDOH and NYSDEC was not only a collaborative effort but established shared responsibilities and mutual accountability in managing staff during a critical public health response, underscoring the commonality of decisionmaking. COVID-19 testing site was an emergency response requiring NYSDOH to work alongside NYSDEC in joint management. By

it's very structure there exist commonality of shared resources between the NYSDOH and NYSDEC in their joint management agreement, including federal funding for wages, supervision over Plaintiff's daily activities, and direct involvement in Plaintiff's termination.

Additional indicia of control can further substantiate the joint employer relationship but instead the Court denies Plaintiff's Motion for lacking these facts. [Arguments are preserved for appeals in Doc. 71 filed 3/31/24]. The Court should reconsider Plaintiff's requests to provide additional indicia of control, as ruling to the contrary goes against established holdings that favor the consideration of facts that establish control for joint employer claims against NYSDEC. Especially considering the Court has granted in part the filing of the proposed Amended Complaint. However by failing to consider the full context of various facts that substantiate control exerted by NYSDEC in this novel joint work arrangement, the Court fails "to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training," and impairs Plaintiff's case by "harsh application of technical rules." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). It is a waste of judicial resources and time to have Plaintiff appeal this only for facts to be later considered on appeals.

**Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this motion: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. Plaintiff's address on file is current and up to date.

Signature of Plaintiff:
Date of signing: October 15, 2024
Printed Name of Plaintiff: Talha S. Pasha

Defendants are directed to respond to the motion for reconsideration by October 31, 2024.  SO ORDERED.

Edgardo Ramos, U.S.D.J.
Dated: October 17, 2024
New York, New York

22